CRAWFORD ALLEN, APPELLANT v. JOHN HAMMOND, APPELLEE.

The brig Ann, of Boston, on a voyage from New Orleans to Madeira, &c. was unlawfully captured by a part of the Portuguese squadron; and was, with her cargo, condemned. Upon the remonstrance of the government of the United States, the claim of the owner for compensation for this capture was, on the 19th of January, 1832, admitted by the government of Portugal, to an amount exceeding $33,000; one-fourth of which was soon after paid. On the 27th of January, 1832, the owner of the Ann and cargo, neither of the parties knowing of the admission of the claim by Portugal, made an agreement with the appellant, to allow him a sum, a little below one-third of the whole amount of the sum admitted, as commissions, on his agreeing to use his utmost efforts for the recovery thereof. At the time this agreement was made, which was under seal, H. the appellee, was indebted to the appellant A. $268 for services rendered to him in the course of a commercial agency for him. In the contract, it was agreed that this debt should be released. Under the contract, A. received the payment of one-fourth of the amount admitted to be due to H. by Portugal; and H. filed a bill to have the contract rescinded, and delivered up to him; the debt of $268 to be deducted from the same, with interest, &c. The circuit court made a decree in favour of H., and on the payment of $268, with interest, the contract was ordered to be delivered up to be cancelled. The decree of the circuit court was affirmed; the court being of opinion, that the agreement had been entered into by both the parties to it, under a mistake, and under entire ignorance of the allowance of the claim of the owner of the Ann, and her cargo. It was without consideration : services long and arduous were contemplated, but the object of those services had been attained.

If a life estate in land is sold, and at the time of the sale, the estate is terminated by the death of the person in whom the right vested, a court of equity would rescind the purchase. If a horse is sold, which both parties believed to be alive. the purchaser would not be compelled to pay the consideration.

The law on this subject, is clearly stated in the case of Hitchcock v. Giddings; Daniel's Exchequer Reports, 1, where it is said that a vendor is bound to know he actually has that which he professes to sell. And even though the subject of the contract be known to both parties to be liable to a contingency, which may destroy it immediately; yet if the contingency has already happened, it will be void.

APPEAL from the circuit court of the United States, for the district of Rhode Island.

In the circuit court of Rhode Island, the appellee, John Hammond, filed a bill praying that a certain instrument in writing, executed by him and the appellant, in January, 1832, by which he had stipulated to allow to the appellant a compensation for establishing a claim on the Portuguese government, for the illegal capture of a

vessel belonging to him, should be cancelled; the consideration for the said stipulation having failed. The bill also prayed for other relief, and that the instrument should be delivered up to be cancelled.

The circuit court gave a decree in favour of the complainant; and the defendant appealed to this Court.

The facts of the case are fully stated in the arguments of counsel; and in the opinion of the Court.

The case was argued by Mr. Green, and Mr. Ogden, for the appellant; and by Mr. Webster for the appellee.

This was a case in equity, and came before the Court on an appeal from a decree of the circuit court of the United States for the district of Rhode Island.

John Hammond filed his bill against the appellant, praying, among other things, that a certain power of attorney, and a certain agreement between said Hammond and Allen, mentioned in the bill, might be decreed to be delivered up to the complainant to be cancelled. The power of attorney referred to is an irrevocable power from Hammond to Allen, to receive from the government of Portugal, or of the United States, and of and from all and every person and persons whomsoever, a certain claim or demand which said Hammond had for and on account of the capture and condemnation of the American brig Ann, of Boston, and her cargo, on a voyage from New Orleans to Goree, (intending to stop and trade at Fayal, Madeira, and Teneriffe,) by the Portuguese squadron cruising off the island of Terceira, and condemned by the tribunal sitting at Lisbon, under the authority of the Portuguese government, on the 22d of December, 1831. The agreement was made on the 27th day of January, 1832, between Hammond and Allen, by which Hammond agreed to pay Allen ten per cent. on all sums recovered until the amount should equal 8000 dollars, and on all sums, over that amount, thirty-three per cent.; and Allen agreed to use his utmost efforts to bring the claim to a favourable issue, and to receive the aforesaid commission in full compensation for his services and expenses, already incurred, or thereafter to be incurred, in prosecuting the claims.

The bill, amongst other things, alleges that on the 19th of January, 1832, in consequence of measures taken by the representatives of the government of the United States, at Lisbon, the Portuguese go-

[Allen v. Hammond.]

vernment recognised and admitted the complainant's claim to the amount of 33,700 dollars, of which he alleges he was ignorant until the month of March, 1832. That the power of attorney was executed in consequence of certain representations made by Allen, that he could render important services in prosecuting the claim against the Portuguese government, without which services the claim would be lost; and that Allen proposed to Hammond to appoint him his agent; that he was then ignorant his claim had been recognised, and also that the agreement was executed while he remained ignorant of the fact.

The bill also charges, that the claim has not been liquidated or paid, in consequence of any interference or exertions of the defendant, or through any agency or influence on his part.

That both said instruments were executed without due consideration, and when the complainant was ignorant of the situation of his claim on the Portuguese government. That the contract of January 27th, 1832, " was entered into and executed without any adequate consideration or services to be by the said Crawford Allen paid or performed," under mistaken views and ignorance of the then situation of the complainant's claim; and is hard, unconscionable, and unequal, and ought, on that account, to be set aside, even if said claim had not been liquidated by the Portuguese government, at the time said contract was made and executed.

The answer gives the history of the acquaintance between the complainant and defendant; shows the measures to enforce this claim, which the defendant had taken as the agent of the complainant, prior to the execution of the power of attorney; that those measures were approved by the complainant; that the power was read to him; that three copies were executed; and that the complainant saw all the letters which the defendant had received. It alleges that the defendant relinquished all claims for commissions and services, amounting to 268 dollars, then due him; and that the consideration to the complainant for executing said instruments, was the defendant's relinquishment of the immediate payment of the money then in his own hands, of what was then justly due to him for commissions and for services already rendered in regard to the reclamation of said vessel from the Portuguese government, and the agreement on the part of said defendant, to use his " utmost efforts to bring the aforesaid claim to a favourable issue," and to sustain all the expenses in prosecuting said claim.

[Allen v. Hammond.]

The defendant expressly denies that it was any part of the understanding or agreement between him and the complainant, that the defendant was not to receive said stipulated sums in case there should be little or no trouble in obtaining said money.

On the contrary (he states) the understanding and agreement was that the defendant was to receive said sums and no more, even though his trouble and expenses should much exceed said sums, and to receive said sums also if his trouble and expenses should be but very small; and both parties fully understood that the value of the bargain to the defendant depended on these contingencies—and the defendant avers that he had no knowledge at the time of the situation of the claim, except that derived from the letters annexed to his answer, that all the information he had was made known to the complainant and was common to them both; that it was made known to the complainant in conversations and by exhibiting said letters; and he denies that the agreement, when executed, was to depend for its validity on any subsequent information, from any source whatever. " On the contrary, it was fully understood that contingencies like the one which unexpectedly happened, or others of an opposite character, might render the agreement very advantageous, or very disadvantageous to the defendant."

The decree requires the defendant to bring the agreement of January 27th, 1832, into the clerk's office within ninety days, for cancellation, and enjoins the defendant from asserting any title at law or in equity, under the same: and it also orders the payment of 268 dollars by the complainant, to the defendant.

Mr. Green and Mr. Ogden for the appellant contended, that this decree ought to be reversed, because it appears by the evidence in the cause,

1. That the agreement was fairly made, and for a valuable consideration, and is not unconscionable or oppressive.

2. That it was made with an equal knowledge of all the circumstances on the part of each of the contracting parties.

3. That the fact that the claim might have been allowed by the Portuguese government must have been contemplated by the parties when the agreement was made, and was one of the contingencies which might make it more or less profitable to the defendant; and that the allowance of the claim of that government did not relieve the defendant from other duties to be performed, and expenses to be

[Allen v. Hammond.]

incurred, under the agreement; nor was the recognition of the claim, or even obtaining its payment, the sole consideration for the agreement.

4. That the defendant, by his acts, affirmed the agreement after he had full knowledge that the claim had been allowed by the Portuguese government.

The evidence fully shows that the agreement was fairly made, and for a valuable consideration. The consideration was a relinquishment of a debt of 268 dollars, due by the appellee, and of a compensation for services in prosecuting a claim. Heavy expenses would be incurred in the prosecution of the same; and at the time the arrangement was made, the issue of the undertaking of the appellant was very doubtful.

The agreement was made with an equal knowledge of all the facts by both parties to it. At the moment the agreement was made, both parties might have supposed the Portuguese government had recognised it; as it was known to both that the government of the United States had made the injury done to the appellee the subject of diplomatic complaint, and had demanded satisfaction for it. Thus, the objection to the rights of the appellant, founded on a want of consideration, or too great a compensation for services done, or to be done by him, which was sustained by the circuit court, should not have prevailed. The contract was made with a view to every contingency; and that of an actual acknowledgment of the claim having been made, was one of those contingencies contemplated by the parties. There was also a sum of money actually paid for the contract. This the appellant was not to have returned to him under any circumstances. The situation of the claim of the appellee on the Portuguese government, at this time, even since its acknowledgment, and an agreement to pay the amount admitted to be due; shows that there was more in uncertainty than the mere fact that the claim was not allowed. But one of the instalments has been paid; and although the period for the payment of further sums has arrived, nothing more has been received. The government of Portugal is convulsed by intestine divisions, and is without the means of discharging its obligations. The appellant has, under his contract duties yet to be performed. He is bound to keep an agent in Portugal, whose efforts are constant to procure the payment of the remaining sums due to the appellee.

Mr. Webster, for the appellee, contended that at the period of the

[Allen v. Hammond.]

contract with the appellee, there was no state of things existing, which could furnish a consideration for the sum agreed to be allowed to the appellant. He was to prosecute the claim on the Portuguese government, for the capture of the property of the appellee. In doing this, it was expected he would be obliged to pay considerable sums for expenses; to devote much time to the object; to employ agents; and yet, at the instant it was agreed to pay him for all these services, or to provide for all these expenses, nothing was to be done; for all had been accomplished without his agency. Thus no foundation for the contract existed. As to the sum of $268 paid by the appellant, the same principles which prevent his obtaining any thing from the appellee under the contract, entitle him to have that sum repaid to him with interest. Where a fact of leading importance to parties entering into a contract, was supposed to exist, and did not exist, the contract formed on the belief that it was in existence, should be set aside. This was the case between these parties; nothing remained to be done by the appellant. It cannot be contended that the payment of the sum of $268 to the appellee, was a consideration which entitled him to receive the thousands of dollars the contract was to give him, and which he now claims.

In Hitchcock v. Giddings, Daniel's Exchequer Reports, 1, the principles upon which this case is rested by the appellee, are sustained by the court. If the contingency which was the object of the contract has happened, the contract is void.

Mr. Justice M'LEAN delivered the opinion of the Court.

This suit in chancery is brought before this Court, by an appeal from the decree of the circuit court for the district of Rhode Island.

The bill was filed in the circuit court by the appellee, to compel the appellant to deliver up to be cancelled, a certain contract, on the ground of its having been given through mistake.

In the year 1830, the appellee being the sole owner and master of the brig Ann, of Boston, while on a voyage from New Orleans to Madeira, and thence to the coast of Africa, was illegally captured, off the Western Islands, by a part of a Portuguese squadron. Notice of the capture was given to the American government, but the vessel and cargo were condemned.

Such remonstrances were made by the American government, that on the 19th day of January, 1832, the claim of the appellee was ad-

[Allen v Hammond.]

mitted, to the amount of thirty-three thousand and seven hundred dollars, by the Portuguese government.

On the return of the appellee to the United States, he executed a power of attorney to the appellant, which is stated to be irrevocable; authorising him to prosecute his claim against the government of Portugal. And on the 27th of January, 1832, the parties entered into a contract, under seal, in which Hammond agreed to pay Allen ten per centum on all sums which he should recover, up to eight thousand dollars, and thirty-three per cent. on any sum above that amount, as commissions. And Allen agreed to use his utmost efforts to recover the claim.

Prior to this period, and before the power of attorney was given, Allen, who was a commission merchant at Providence, Rhode Island, had acted as the agent of Hammond in procuring insurances on his vessel and cargo, at various times, and also in the transaction of other business. Commissions were charged by Allen as in ordinary cases; and it appears that Hammond was indebted to him for these services, at the date of the above agreement, the sum of two hundred and sixty-eight dollars.

Allen had effected an insurance on the brig for the voyage in which it was captured, and so soon as he heard of the capture, he made representations of the fact to the secretary of state, at Washington. This was not only sanctioned by Hammond, but from his correspondence with Allen, he seems to have placed great confidence in his disposition and ability to serve him.

There are a great number of facts which are proved in the case, and contained in the record; but it is unnecessary to state them, as they can have no direct bearing on the principal, and indeed the only question in the cause.

It appears that eight days before the agreement was entered into by the parties, the Portuguese government admitted the claim of Hammond, one-fourth of which was shortly afterwards paid. And the question arises, whether an agreement, entered into under such circumstances, ought to be delivered up and cancelled.

No one can read the contract without being struck with the large sum that Hammond is willing to pay on the contingency of recovering his claim. Allen was to receive as a compensation for his services, a sum little below the one-third of the amount recovered. This shows, in the strongest point of view, that Hammond could have entertained but a remote prospect of realising his claim; and indeed

it would seem, when the circumstances of the case are considered, that he could have had little or no ground to hope for success.

His vessel and cargo had been condemned; the Portuguese government was in an unsettled state, and its finances in the greatest confusion and embarrassment.

In his vessel and cargo Hammond appears to have lost his entire property; and this very naturally threw him into despondency, and induced him to agree to pay nearly one-third of his demand to an agent who might, by possibility, recover it. He no doubt supposed, that by interesting his agent so deeply in the claim, he would secure his sympathies, and his utmost exertions. And the prospect was, if the claim, or any part of it, should be obtained, it would be the work of time, and of great effort.

Allen is not chargeable with fraud in entering into the contract, or in using the most persevering efforts to get possession of the instalment paid.

That the contract was entered into by both parties, under a mistake, is unquestionable. Neither of them knew that the Portuguese government had allowed the claim. Can a court of equity enforce such a contract? Can it refuse to cancel it? That the agreement was without consideration is clear. Services long and arduous were contemplated as probable, by both parties, at the time the contract was executed. But the object of pursuit was already attained. No services were required under the contract, and for those which Allen had rendered to Hammond prior to it regular charges seem to have been made.

It is true the amount of services required by the agent, was uncertain. He took upon himself this contingency; and had not the claim been allowed by the Portuguese government, until after the contract, he would have been entitled to his commissions, however small his agency might have been, in producing the result. This, it may be supposed, was a contingency within the contemplation of the parties at the time of the contract; so that, unconnected with other circumstances, the smallness of the service rendered could have constituted no ground on which to set aside the contract.

But no one can for a moment believe that Hammond intended to give to his agent nearly ten thousand dollars, on the contingency of his claim having been allowed at the time of the contract. And it is equally clear, that his agent under such a circumstance, had no expectation of receiving that, or any other amount of compensation.

[Allen v. Hammond.]

The contract does not provide for such a case; and it could not have been within the contemplation of either party.. Services were made the basis of the compensation agreed to be paid; but the allowance of the claim superseded all services in the case.

The equity of the complainant is so obvious, that it is difficult to make it more clear by illustration. No case, perhaps, has occurred, or can be supposed where the principle on which courts of equity give relief, is more strongly presented than in this case. The contract was entered into through the mistake of both parties; it imposes great hardship and injustice on the appellee, and it is without consideration. These grounds, either of which in ordinary cases, is held sufficient for relief in equity, unite in favour of the appellee.

Suppose a life estate in land be sold, and at the time of the sale, the estate has terminated by the death of the person in whom the right vested; would not a court of equity relieve the purchaser? If the vendor knew of the death, relief would be given on the ground of fraud; if he did not know it, on the ground of mistake. In either case, would it not be gross injustice, to enforce the payment of the consideration.

If a horse be sold which is dead, though believed to be living by both parties, can the purchaser be compelled to pay the consideration?

These are cases in which the parties enter into the contract, under a material mistake as to the subject matter of it.

In the first case the vendor intended to sell, and the vendee to purchase a subsisting title, but which in fact, did not exist; and in the second, a horse was believed to be living but which was in fact dead.

If in either of these cases, the payment of the purchase money should be required, it would be a payment without the shadow of consideration; and no court of equity is believed ever to have sanctioned such a principle. And so in the case under consideration; if Hammond should be held liable to pay the demand of the appellant, it would be without consideration.

There may be some cases of wager, respecting certain events, where one of the contingencies had happened at the time of the wager, which was unknown to both parties, and which was held not to invalidate the contract. Of this character, is the case of the Earl of March v. Pigot, 5 Burr. 2802. But the question in that case, arose upon the verdict of a jury, on a rule to show cause, &c.; and

[Allen v. Hammond.]

Lord Mansfield says: " the nature of the contract, and the manifest intention of the parties, support the verdict of the jury (to whom it was left without objection,) that he who succeeded to his estate first, by the death of his father, should pay to the other without any distinction, whether the event had or not, at that time, actually happened."

In 1 Fonblanque's Equity, 114, it is laid down, that where there is an error in the thing for which an individual bargains, by the general rules of contracting, the contract is null, as in such a case the parties are supposed not to give their assent. And the same doctrine is laid down in Puffendorff's Law of Nature and Nations. b. 1. c. 3. sec. 12.

The law on this subject is clearly stated, in the case of Hitchcock v. Giddings, Daniel's Reports, 1; where it is said, that a vendor is bound to know that he actually has that which he professes to sell. And even though the subject matter of the contract be known to both parties to be liable to a contingency, which may destroy it immediately; yet if the contingency has already happened, the contract will be void.

By the decree of the circuit court, on the payment of the amount, including interest, which is due from the appellee to the appellant, he is required to deliver up to be cancelled the agreement entered into on the 27th of January, 1832, which leaves the parties as they were before the contract; and as we consider the decree just, and sustained by principle, it is affirmed.


This cause came on to be heard on the transcript of the record from the circuit court of the United States for the district of Rhode Island, and was argued by counsel. On consideration whereof, it is now here ordered, adjudged and decreed, by this Court, that the decree of the said circuit court in this cause, be, and the same is hereby affirmed, with costs.