Littleton, Judge>
delivered the opinion of the court:
The controlling question in this case is whether plaintiff was reemployed in the Government service within the meaning of section 7 of the Civil Service Retirement' Acts of July 3,1926 (44 Stat. 904), and May 29,1930 (46 Stat. 468), quoted in finding 13. The act of September 22, 1922 (finding 12), was superseded by the two subsequent acts. If plaintiff was not so reemployed in September 1926 he is entitled under the express terms of the applicable statutes to the annuity claimed, since he had more than fifteen years’ service prior to being involuntarily separated from the service without prejudice due to a reduction in force (finding 2).
At the time of his separation from the service on February 28, 1922 plaintiff was receiving a salary of $2,400 per annum as a pilot. He had then reached the age of 46 years 10 months and 15 days. He became 55 years of age on April 16, 1930. During the period of his service prior to February 28, 1922 no deductions had been made from his salary for quarters and subsistence although they were furnished him. Provision for such deductions was first made by section 3 of the Act of March 2,1926 (44 Stat. 136,161), as follows:
The head of an executive department or independent establishment, where, in his judgment, conditions of employment require it, may continue to furnish civilians employed in the field service with quarters, heat, light, household equipment, subsistence and laundry service; and appropriations for the fiscal year 1927 of the character heretofore used for such purpose are hereby made available therefor: Provided, That the reasonable value of such allowances shall be determined and considered as part of the compensation in fixing the salary rate of such civilians.
Regulations of the War Department-applicable to the position involved in this case were first issued August 6,1926, and amended, effective October 1, 1926, on September 24, 1926. Captain K. M. Bennett, the Supervisor of the New York Harbor, was fully advised of this statute and the regulations thereunder prior to and at the time he orally offered plaintiff the position of Mate on September 24, 1926, and when he *267 confirmed that offer in writing on September 29. The. Government admits that plaintiff was not advised at any time before going on the boat Cerberus that deductions would be made from his salary, which he had been advised by Bennett would be $2,600 per annum, for quarters and subsistence, although the Master of the boat had a letter for delivery to plaintiff at the time he went aboard stating that such deductions would be made. The letter was delivered after the boat was at sea. The Government further admits that at all times prior to the time when this letter was handed to plaintiff, he was ignorant, of the enactment of section 3 of the act of March 2, 1926, and that he had no knowledge of the departmental regulations theretofore promulgated making provision for specified monthly and annual deductions from basic salaries for quarters and subsistence under the provisions of that act.
From these facts it is clear that Captain Bennett withheld from plaintiff on September 24 and 29, important facts as to what his actual net salary would be, which facts were known to Bennett and unknown to plaintiff, and which plaintiff was entitled to know. Although it is not necessary to the decision, we cannot escape the conclusion that the Supervisor knowingly and purposely withheld this information from plaintiff when he offered him a salary of $2,600 on September 24 and when he confirmed this offer in the letter of appointment on September 29, after it had been verbally accepted by plaintiff under a misunderstanding on his part. If it be assumed that Captain Bennett was not aware of plaintiff’s ignorance of the Act of March 2 and of the regulations, there was still no complete reemployment agreement. If such was the case there was a mutual misunderstanding and this had the effect of vitiating the supposed agreement.
The proof conclusively shows that plaintiff believed the $2,600 salary would be paid without any deductions and that he would not have accepted the position offered him had he known or been advised that his salary of $2,600 would be reduced by deductions for quarters and subsistence while on board the boat. Plaintiff notified the Supervisor, upon the receipt of the inquiry, that he would not accept the position of Mate at $175 a month, $2,100 a year, and he did this *268 also under the belief that the salary offered included quarters and subsistence, as had previously been the case during the period when plaintiff received a salary of $200 a month, $2,400 a year, as Pilot. The net salary which plaintiff would have received, under the regulations, out of the $2,600 a year would have been $2,300 a year or $191.66 a month after deduction of $300 a year or $25 a month as provided in the regulations.
In these circumstances it seems obvious that there was no meeting of minds on the terms and conditions of the contract of employment or the appointment by the Supervisor to the position in question. There was never an acceptance by plaintiff of the position in question for the compensation offered. Plaintiff rejected the original offer and the Supervisor’s appointment the moment he became advised of the true terms and conditions thereof. This occurred on October 1,1926, before the Supervisor had requested authority, as he was required to do, to make the appointment. Plaintiff did not resign and in the circumstances it was not necessary that he should.
A mutual misunderstanding as to an essential element of a supposed agreement, whether it be an employment agreement or other formal contract, vitiates the agreement. In Utley v. Donaldson, 94 U. S. 29, 47, the court said:
There can be no contract without the mutual assent of the parties. This is vital to its existence. There can be none where it is wanting. It is indispensable to the modification of a contract already made as it was to making it originally. Where there is a misunderstanding as to anything material, the requisite mutuality as to assent as to such thing is wanting; consequently the supposed contract does not exist, and neither party is bound. In the view of the law in such case, there has been only a negotiation, resulting in a failure to agree. What has occurred is as if it were not, and the rights of the parties are to be determined accordingly.
See, also, to the same effect, Allen v. Hammond, 11 Pet. 63; National Bank v. Hall, 101 U. S. 43, 49, 50; Restatement of the Lam of Oontracts, Section 501, Comment (b) and Section 71 (a) and (b).
*269 In Turner & Otis v. Webster 24 Kan. 38 (36 Am. Rep. 251) the defendants, Turner and Otis, had caused the sheriff to attach a mill and had authorized him to employ a watchman. Pursuant to this authorization, the sheriff had contacted plaintiff, Webster, who consented to act as watchman for compensation which Webster understood to be $3 a day, but which the sheriff understood to be $1.50 a day. The facts with reference to the misunderstanding appear in the opinion of the court as follows:
The misunderstanding seems to have arisen in this way. After the attachment Turner & Otis requested the sheriff to find someone to guard the mill. Meeting Webster he asked him what he would undertake the job for. He replied, one dollar and a half a day, and nights the same. The sheriff understood him to say and mean one dollar and a half for each day of twenty-four hours, while plaintiff meant that amount for a day of twelve hours, and the same for the night time, or three dollars for every twenty-four hours. The sheriff reported the offer to Turner & Otis as he understood it, and they, after some hesitation, told him to accept the offer and employ Webster. Without further words as to the price the sheriff gave the key to the mill to Webster, and told him to go ahead. * * *
Webster brought suit to recover the reasonable value of his service on quantum meruit, contending that there was a mistake as to the compensation and therefore no express contract as to that. The court, in agreeing with this contention, said at p. 40:
It will not be questioned, that, where the minds of two contracting parties do not come together upon the matter of price or compensation, but do upon all other matters of the contract, and the contract is thereupon performed, the law awards a reasonable price or compensation. * * * Here, Webster never assented to a contract to work for $1.50 a day. He agreed to do a certain work, and did it, but his understanding was that he was to receive $3 per day. Turner & Otis employed him to do that work, and knew that he did it; but their understanding was, that they were to pay but $1.50 a day. In other words, the minds of the parties met upon' everything but the compensation. As to that, there was no aggregatio *270 mentium. What, then, should result? Should he receive nothing because there was no mutual assent to the compensation? That were manifest injustice. Should his understanding bind both parties? That were a wrong to them. Should theirs control? That were an equal wrong to him. The law, discarding both, says a reasonable compensation must be paid. * * *
In the case at bar Supervisor Bennett, acting for the Government, after being advised that plaintiff had rejected the appointment and had left the boat under the circumstances mentioned, paid plaintiff for four days, October 1 to October 4, 1926, the last day being a Sunday, but the fact of such payment does not affect the question here. Plaintiff would have left the boat immediately upon being advised of the terms of the appointment as to compensation, if he could have done so, or if he had been advised of such terms when he reported to the Master, he would not have gone on board the boat. It does not appear that plaintiff demanded payment for the four days under the supposed employment agreement or the Supervisor’s appointment of September 29. Whatever plaintiff was entitled to was due for the value of the service rendered and not under a complete and valid agreement or appointment. See Section 3679 Revised Statutes, U. S. C. Title 31, Sec. 665; St. Louis Hay & Grain, Co. v. United States, 191 U. S. 159.
In addition to what has already been said, it is important here, we think, to note that plaintiff was not actually reemployed by the Government within the meaning of the Civil Service Retirement Acts until such authority therefor was granted by the Chief of Engineers, U. S. Army, and the Secretary of War, and such authority was not requested by Supervisor Bennett until October 2 and was given October 14,1926. The appointment given by Captain Bennett orally on September 24 and in writing on September 29, was not final until approved and confirmed by the Chief of Engineers and the Secretai’y of War. Before this was done plaintiff had rejected the position offered as well as the Supervisor’s appointment. There was, therefore, no valid employment agreement or appointment to approve or confirm.
*271 We are of opinion that the reemployment referred to and contemplated by the Civil Service Retirement Acts in force since September 22, 1922, is a valid and completed reemployment by proper authority fully understood and accepted by both parties concerned, and not a mere rendition of some service by a former employee who is receiving an annuity or who is eligible to receive it, under a mutual misunderstanding, or other circumstances such as prevailed here. Plaintiff was not so reemployed.
He is therefore entitled to recover the annuity provided by the Retirement Acts of May 22,1920, July 3,1926, and May 29, 1930, for a former employee of his age (55 years) with more than 15 years of service, from April 16, 1930. There is no provisions in these acts as to the time within which application for such annuity must be made. Plaintiff made such application which was denied on the sole ground that he had been reemployed effective October 1,1926.
Judgment will be entered in favor of plaintiff upon the filing by the parties of a statement or stipulation showing the amount due from April 16,1930, to date of judgment. It is so ordered.
Madden, Judge; WhitakeR, Judge, and Whalet, Chief Justice, concur.
J ONES, Judge, took no part in the decision of this case.
In accordance with the above opinion and upon a report from the Civil Service Commission showing the amount due thereunder, it was ordered November 6, 1944, that judgment be entered for the plaintiff in the sum of $4,870.71.