# Supreme Court of the Navajo Nation

**Evelyn and Watson Hood, Appellants,**
**v.**
**David and Delores Bordy, Appellees.**
**Decided February 22, 1991**

## OPINION

Before TSO, Chief Justice, BLUEHOUSE and AUSTIN, Associate Justices.

Casey Watchman, Esq., Crownpoint, Navajo Nation (New Mexico), for the Appellants; and Frank J. Lally, Esq., Gallup, New Mexico, for the Appellees.

Opinion delivered by TSO, Chief Justice.

This is an appeal taken by Evelyn and Watson Hood ("appellants") from a final opinion and order of the Crownpoint District Court, dated April 11, 1990, denying appellants' claims that David and Delores Bordy ("appellees") had breached a contract to purchase a home from appellants and, in doing so, had triggered the Navajo Nation's forcible entry and detainer statutes; and ordering restitution to the appellees, in the amount of the consideration paid towards the purchase price of the home.

Appellants have failed to perfect their appeal as to the issue of application of the Nation's forcible entry and detainer law; thus, we have no jurisdiction to review that claim. 16 N.T.C. § 1807. We do have jurisdiction to review appellants' appeal as to the issue of the validity of the oral contract entered into by the parties. 7 N.T.C. § 302. Based upon our review of the record and all applicable statutory and traditional Navajo law, as well as general contract law, we find no merit in appellants' claim and sustain the District Court decision.

## I

In 1981, for a price of $2,500.00, appellants purchased from Ernest Becenti Jr., Apartment 105-D, located in Indian Village in Church Rock, New Mexico. This apartment was one of a group of apartments built in 1944 for employees of the nearby Army depot and deeded to the Navajo Nation after World War II. The transaction between Becenti and appellants was evidenced by a Bill of Sale, dated September 23, 1988. On September 23, 1987, the parties to this appeal entered into an oral contract, in which the appellees agreed to buy and appellants agreed to sell that same apartment. The parties agreed to a purchase price of $2,500.00,

which was to be paid with a down payment of $1,000.00, and monthly install-
ments of $150.00. However, appellees actually paid $900.00 down and, in the first
six months after making of the contract, paid only an additional $350.00.

Appellants told appellees, prior to the oral contract, that the apartment had
been condemned by the Navajo Nation. However, appellants told appellees they
had "refurbished" the apartment, and assured appellees that the apartment would
not be razed, at least not without compensation to the "owners." The parties dif-
fer on what documentation of ownership appellants promised to deliver to
appellees. Appellants claim that they only intended to provide appellees with a
bill of sale and that they told appellees that they did not hold the title to the prop-
erty. Appellees insist that they were not told that appellants did not hold title to
the apartment and that the agreement was for conveyance of a title.

After paying a total of $1,250.00, appellees in March, 1988, discontinued their
monthly payments to appellants. On August 19, 1988, appellees told appellants
that they would pay no more toward the purchase of the apartment because they
had discovered that title for the property is held by the Navajo Nation and there-
fore could not be delivered to appellees by appellants. That same day, appellants
served appellees with a notice of eviction, giving them three days to vacate the
apartment. Appellees did not vacate the apartment but, apparently, continue to
live there.

Appellants filed suit on May 3, 1989. They claimed a breach of an oral con-
tract. They also claimed that appellees, by breaching the contract to buy the
apartment, became tenants at sufferance and were subject to the provisions of the
Navajo Nation's forcible entry and detainer law, as codified at 16 N.T.C. §§
1301-07. Appellants asked the District Court to order appellees to restore pos-
session of the apartment to them and to pay rent from August 23, 1988.
Appellees countersued, alleging that the contract was invalid, and asking for
reimbursement of the $1,250.00 they had paid to appellants.

The matter was heard by the District Court on October 17, 1989, and an opin-
ion was issued on April 11, 1990, finding for appellees and ordering restitution
in full. The lower court found that there was an oral contract, which included an
agreement to convey title for the apartment when appellees had made their final
payment; that the Navajo Nation holds title to the apartment; and that appellants
"never acquired a valid legal ownership interest" in the apartment. District Court
opinion at 1-2. Based on these findings of fact, the court held that because
appellees did not get what they bargained for, there was a lack of consideration
and the contract was invalid. *Id.* at 3. The court also rejected appellants' attempt
to regain possession of the apartment and to secure rent from appellees, under the
forcible entry and detainer law, because appellants lacked proof of ownership
and because allowing individuals to rent condemned Navajo Nation property
would be against public policy, as "inconsistent with the health, welfare and safe-
ty of the Navajo Nation." *Id.* at 4.

Appellants raise two issues on appeal. First, they claim that the District Court

erred in finding that appellants had no right to relief under the Navajo Nation's forcible entry and detainer statutes. Second, they claim that the District Court improperly found that the oral contract between the parties was invalid for lack of consideration. As basis for both claims, appellants urge this Court to find that they acquired a "customary use" ownership or possessor interest in the apartment through the purchase from Becenti, and through their improvements to the property, and that they were at liberty to sell that interest to appellees.

## II

The first issue raised by appellants must be disposed of without consideration. Rule 23 of the Navajo Rules of Civil Appellate Procedure ("NRCAP") directs that in appeals of forcible entry and detainer cases:

> [T]he appellant shall file with the district court an appeal bond as provided in 16 N.T.C. § 1807. Proof that the bond has been filed shall be forwarded to the Clerk of the Supreme Court with the case record.

The applicable Code section reads:

> Either party may appeal from the decision to the Appeals Court of the Navajo Tribe by giving notice as in other actions and filing with the court within five days after rendition of the judgment a bond in an amount equal to double the yearly value or rental of the premises in dispute....

16 N.T.C. § 1807.

Here, the record does not contain proof that appellants have filed the requisite bond with the District Court. The controlling statute is jurisdictional. See *Yazzie v. Navajo Housing Authority*, 3 Nav. R. 117 (1982). That is, an appeal upon this issue is not a matter of right, but rather one allowed by statute and only upon the condition that certain procedures are followed. Lacking evidence that those procedures have been complied with to the letter, we have no authority to hear the appeal because it has not been perfected.

## III

As to the second issue raised by appellants, we are limited in our review of the District Court decision to the issues of law. The Judicial Reform Act of 1985 eliminated trial *de novo* in the Supreme Court. Thus, we must accept the facts as found by the District Court, unless the record reveals plain error. Such error is not found in the record of this case.

The District Court found, and we must accept as true, that the parties here made an oral agreement under the terms of which the appellees were to pay $2,500.00 to appellants and appellants were to convey title for the apartment to appellees. The District Court also found that title to the property is held by the Navajo Nation. Applying the common law of contracts to the facts, the court

below concluded that appellants' inability to convey title rendered the contract invalid for lack of consideration. This conclusion clearly is proper.

The general requirements for the formation of a valid contract are five in number: 1) It must be made by competent parties; 2) The parties must expressly assent to their "meeting of the minds," in a form required by the law of the jurisdiction; 3) It must be supported by sufficient consideration (requiring a mutuality of obligation, but by rare exception); 4) It must not, at the time of its making, be obviously impossible to perform (unless the risk of impossibility is assumed); and 5) It must not be against public policy. 17 Am. Jur. 2d *Contracts* § 10 (1964).

Here, the parties bargained for the exchange of money for a binding promise to convey title. At the time that the bargain was struck, appellants neither held the title they promised to convey, nor was there any possibility that they would come into possession of it. Appellees argued at trial, and the court below accepted, that these facts invalidated the contract because of lack of consideration (requirement three above). In contrast, appellants' argument at trial and in their appeal to this Court seems to support the conclusion that the contract was invalid because there was no "meeting of the minds" of the parties as to what was being exchanged (requirement two above). It also is reasonable to conclude that the contract was void because at the time it was formed, performance on the part of appellants was impossible (requirement four above), i.e., that it was impossible for appellants ever to convey title. Finally, the court below held that renting the condemned property of the Navajo Nation is against public policy. We agree and further hold that a contract to sell the condemned property of the Navajo Nation also is void as against public policy (requirement five above).

For any or all of the above reasons, the contract between the parties here was invalid. The District Court cannot be faulted for its determination that the contract between the parties here failed for lack of consideration, the lack of consideration arising from the impossibility that appellants' binding promise could be performed. Nor was the relief given by the District Court an anomaly:

> [I]t is common practice for purchasers of real estate, upon the refusal or inability of the vendor to convey, to bring an action to recover back the purchase price, instead of an action to recover damages for a breach of the contract. The action also lies to recover back money paid for property entirely worthless.

17 Am. Jur. 2d *Contracts* § 399 (1964).

## IV

Even assuming arquendo that the parties here contracted for something other than the title to the apartment, the agreement was invalid.

Title to the property in question is held by the Navajo Nation. Appellants do not dispute this fact. They claim, however, to have gained customary use ownership of the apartment. Appellants argue that their customary use ownership arises from traditional Navajo property concepts and from the codification of those

concepts at 16 N.T.C. § 1401. The latter authorizes the payment of damages to Navajo Indians whose "improvements" on tribal land are disposed of or destroyed by the adverse disposition of the land by the Navajo Nation. Appellants further contend that their "ownership" encompasses the right to sell the property to appellees, and that it was this "ownership" interest that appellees agreed to purchase.

In order to support a decision that the District Court erred under this line of reasoning, we are required to find both that customary use ownership of the type alleged is recognized under the laws and traditions of the Navajo Nation and that appellants' actions prior to the making of the contract with appellees established this type of customary use ownership. These findings are required in order for appellants to avoid the invalidation of the contract on the basis of mutual mistake. As the United States Supreme Court wrote: "If a horse be sold which is dead, though believed by both parties to be alive," and if the purchaser is required to pay the purchase price, that payment would be "without the shadow of consideration" and without sanction of any court. *Allen v. Hammond*, 11 Pet. 63, 71, 9 L.Ed. 633, 636 (1837). Thus, even if the contract between the parties was made for conveyance of a customary use ownership interest, if the Navajo Nation does not recognize this type of ownership or if this type of ownership, although recognized, does not reside with appellants, we must affirm the District Court's decision that the contract was invalid.

Navajo statutory and customary or common law must be applied where not prohibited by federal law. 7 N.T.C. § 204; *Estate of Belone*, 5 Nav. R. 161, 165 (1987). The applicable Navajo common law may be shown:

> [T]hrough recorded opinions and decisions of the Navajo courts or through learned treatises on the Navajo way; it may be judicially noticed, or it may be established by testimony of expert witnesses who have substantial knowledge of Navajo common law in an area relevant to the issue before the court.

*Id. citing Estate of Boyd Apachee*, 4 Nav. R. 178, 179-81 (Window Rock D. Ct., 1983). Although, here, appellants have provided no documentary or testimonial support for their reliance on Navajo common law, that void is not necessarily fatal to their claim.

> Where no question arises regarding custom or usage, the court need not avail itself of experts in Navajo culture. Rule 5, Navajo Rules of Evidence. 7 N.T.C. § 204(a) requires the court to take judicial notice of Navajo traditional law. Even if custom and tradition are arguably matters of factual evidence, and not simply reading the law as it is printed, it is clear that a court can take judicial notice of customs as adjudicative facts. Thus, if a custom is generally known within the community, or if it is capable of accurate determination by resort to sources whose accuracy cannot reasonably be questioned, it is proven.

*Id.* However, where a claim is made under the traditions or customs of the Navajo Nation, particular scrutiny must be made of those traditions.

> The danger in using Navajo custom and tradition lies in attempting to apply customary principles without understanding their application to a given situation. Navajo custom varies from place to place throughout the Navajo Nation; Old customs and practices may be followed by the individuals in a case or not; There may be a dispute as to what the custom is and how it is applied; or, A tradition of the Navajo may have so fallen out of use that it cannot any longer be considered a 'custom.' The courts should see whether a particular custom or tradition is generally accepted and applicable to the parties before the Court.

*Lente v. Notah*, 3 Nav. R. 72, 79-80 (1982).

Appellants are correct in their assertion that the traditional view of property ownership in the Navajo Nation differs fundamentally from that in the Anglo-American world. Private ownership of land, as by fee simple in the Anglo legal system, is unknown in the Navajo Nation. *Estate of Benally*, 5 Nav. R. 174, 179 (1987). Rather, as the Window Rock District Court properly recognized:

> There are valuable and tangible assets which produce wealth. They provide food, income and the support of the Navajo People. The most valuable tangible asset of the Navajo Nation is its land, without which the Navajo Nation would [not] exist and without which the Navajo People would be caused to disperse like the Jewish People following the fall of Jerusalem. Land is basic to the survival of the Navajo People. While it is said that land belongs to the clans, more accurately it may be said that the land belongs to those who live on it and depend upon it for their survival. When we speak of the Navajo Nation as a whole, its lands and assets belong to those who use it and who depend upon it for survival — the Navajo People.

*Tome v. Navajo Nation*, 4 Nav. R. 159, 161 (Window Rock D. Ct., 1983).

The ownership of the land always remains vested in the Navajo Nation as a whole, and cannot be wrested away through adverse possession or prescription by individual occupiers. *Yazzie v. Jumbo*, 5 Nav. R. 75, 77 (1986). However, we have recognized the custom that individual Navajos who use or improve the land with buildings, corrals, fences, etc., create for themselves a customary use ownership interest:

> Land use on the Navajo Reservation is unique and unlike private ownership of land off the reservation. While individual tribal members do not own land similar to off reservation, there exists a possessory use interest in land which we recognize as customary usage. An individual normally confines his use and occupancy of land to an area traditionally inhabited by his ancestors. This is the customary use area concept.

*Estate of Wauneka Sr.*, 5 Nav. R. 79, 81 (1986). Moreover, the customary use ownership concept encompasses the right to sell or otherwise dispose of the improvements made on the land:

> The native type of dwelling follows the same rules; ownership is vested in the builder. The free use of buildings by any family member is always implied.

> The owner or owners, however, have the right of disposal, the right of sale and removal, of forbidding others the use of the premises (corrals, shelters, etc.), and of exacting damages for willful destruction.

B. Haile, *Property Concepts of the Navaho Indians*, 11 (1954) .

In recent years, the Navajo Nation has taken steps to encourage its citizens to document their claims of customary use ownership, by applying for homesite leases. 16 N.T.C. §§ 801 *et seq*. This move toward a more formalized property rights system was prompted by the need for an orderly method of providing for the increase in population in the Nation, and by the requirement of financial institutions for some sort of ownership documents for those wishing to borrow funds to build homes. Navajo Tribal Council Res. CJ-14-53 (passed January 16, 1953); and Navajo Tribal Council Res. CO-58-58 (passed October 8, 1958). However, the Nation and its courts continue to recognize the legitimacy of customary use ownership. *See* the preamble to Navajo Tribal Council Res. CJA-18-60 (passed January 22, 1960), with which the Tribal council adopted 16 N.T.C. §§ 1401 *et seq*. ("The custom of the Navajo Tribe is that improvements of individual Navajo Indians on unwithdrawn Navajo Tribal lands are considered as the personal property of such Indians and not of the Tribe, ...."); *Wauneka Sr.*, 5 Nav. R. at 81.

This Nation's recognition of customary use ownership, while satisfying the first prong of the question at hand, lends no support for appellants' claim that they possessed such an interest in the apartment. Appellants rely on the Navajo Nation's codification of the customary use concept in 16 N.T.C. § 1401, *et seq.*, wherein the Nation has provided for the payment of damages when it takes or destroys improvements made by individual Navajos during adverse disposition of land, as support for their claim of ownership of the apartment. It is true that the payment of such damages is premised on the Navajo Nation's implicit recognition that Navajos may acquire a private ownership right to improvements on land which belongs to the Nation. And, this Navajo view of property does differ radically from Anglo-American property law, which holds that:

> [A] building permanently fixed to the freehold becomes part of it, and prima facie, a house is real estate, belonging to the owner of the land on which it stands, even though it was erected against the will of the landowner, or without his consent. Also, an addition to an existing building becomes property of the landowner, though erected by his permission, in the absence of any other agreement.

63A Am. Jur. 2d *Property* § 18 (1984). However, appellants' claim that their purchase, occupation, and upkeep of the apartment created a customary use ownership of that property fails for at least two reasons.

First, appellants claim that their customary use ownership interest arises either from their purchase of the "refurbished" apartment or from their own "refurbishing" of the apartment. Although the record is not clear on the question of just who — whether appellants or Becenti — replaced the floors, roof,

and windows, and painted and installed panelling in the apartment, there is no suggestion that any of the work was done "from the ground up," in construction lingo. Therefore, the work completed on the apartment does not conform to the definition of "improvements" established by the Navajo Nation. The code defines "improvement" as:

> [H]ouse, hogans, sunshades, stables, storage sheds and dugouts, and sweathouses; sheep and horse corrals, lamb pens, and fences lawfully maintained; irrigation ditches, dams, charcos, development work on springs, and other water supply developments; any and all structures used for lawful purposes and other things having economic value.

16 N.T.C. § 1401(b). Nowhere in the statute is there an express or implied allowance for the creation of customary use ownership from the mere act of fixing up an already existing and currently owned building. That being so, regardless of who repaired the apartment, it cannot be said that a customary use ownership interest arose from that endeavor, whether originally with Becenti and passed on by sale to appellants or with appellants.

Second, 16 N.T.C. § 1401(c) expressly disallows a claim of customary use ownership where:

> [The claimant] at the time of building or acquiring said improvement knew or with reasonable diligence ought to have known that the area in which it was located was proposed to be disposed of by the Navajo Tribe adversely to such person's interest.

Here, appellants admit that when they purchased the apartment from Becenti, they were fully aware that it was condemned and most likely would be razed by the Navajo Nation. Thus, appellants cannot claim to possess a customary use ownership, as envisioned by 16 N.T.C. § 1401.

In summary, then, it is clear that while the concept of customary use ownership is recognized and protected by the Navajo Nation, there is nothing in the record to suggest that such customary use ownership vested in appellants as regards this apartment. Thus, their contention that they bargained to transfer some type of non-titled customary use ownership to appellees, even if appellees shared the appellants' erroneous belief that such an ownership interest resided with appellants and could be sold, cannot rescue the parties' contract from invalidity.

## V

We find that, as to the first issue of this appeal, appellants have failed to perfect their appeal, and we are without jurisdiction to consider it. We further find that, as to the second issue on appeal, the District Court correctly applied the law to the facts of this case.

The Crownpoint District Court decision is AFFIRMED.