## ONTARIO PAPER CO., Limited, v. NEFF.

### (Circuit Court of Appeals, Seventh Circuit. October 7, 1919.)

### No. 2685.

SHIPPING ⊖=104—RIGHT TO RESCIND FREIGHT CONTRACT FOR MUTUAL MISTAKE.

Where, in making a contract for carriage by a steamer during the lake season of a stated quantity of paper, the parties in good faith made a computation that the vessel could carry 1,500 tons each trip, on which computation the freight rate was based, but the first trip demonstrated that her capacity did not exceed 600 tons, the carrier *held* entitled to rescind the contract for mutual mistake.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by Charles S. Neff against the Ontario Paper Company, Limited. Decree for libelant, and respondent appeals. Affirmed.

Perry S. Patterson, of Chicago, Ill., for appellant.
Charles E. Kremer, of Chicago, Ill., for appellee.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

EVANS, Circuit Judge. Appellee, Charles S. Neff, filed his libel to recover of appellant certain freight and demurrage charges. This claim, allowed in full in the District Court, is not in dispute in this court. Appellant, however, maintained in the lower court, and does here urge, that its cross-libel for $22,480.37, arising out of appellant's failure to complete its contract, should have been allowed.

The record discloses a situation that clearly entitles appellant to a decree, unless we accept appellee's urge that a mutual mistake occurred when the contract was made, which relieved it of its obligation.

Briefly, by the terms of the agreement under consideration, the steamer Charles S. Neff was to haul "about 18,000 tons of paper" during the navigation season of 1916, "in as nearly equal semimonthly proportions as possible"; the haul being from Thorold, Ontario, to a certain dock in the city of Chicago, located on the Chicago river. The freight rate was fixed at $1.50 per ton. After making one trip, appellee refused to proceed further with its contract.

The basis for the claim of mutual mistake arose out of facts hardly in dispute. The parties in making the contract were equally ignorant of the paper-carrying capacity of the steamer, and both parties participated in a computation to determine its capacity.

It appears that appellant's agent sought appellee's representative and solicited a season's contract. The per ton charge was necessarily dependent upon the size of the cargo that the Charles S. Neff could carry. Both parties contemplated bimonthly trips. This is apparent from the language of the contract quoted above. In other words, it was expected that the boat would make 12 trips during the season and the total tonnage to be conveyed was 18,000 tons. In other words, a cargo of 1,500 tons was to be carried each trip.

⊖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The oral testimony of the witnesses supports this conclusion thus drawn from the written contract. Mr. Sullivan, representing appellee, testified:

"Q. And how did you arrive at the 18,000 tons of paper to be carried by that steamer? A. That was arrived at largely through computation made by Mr. Dean and myself. At the time the Neff was proposed for this trade, we examined first the possibilities of whether she could carry this paper or not. * * *

"Q. Did you know at that time what amount of this paper the Neff could carry? A. We hadn't any knowledge of it at all, except the information we received from Mr. Dean, as to the weights, etc.

"Q. Did you and Mr. Dean take up the matter of ascertaining what the ship. could carry, taking his statement as to the weights, and your statement as to the size of the Neff? A. We did; we professed at the outset that we knew nothing whatever about paper. We had never carried any of it; all that we had seen of it was what we maybe had seen on wagons going through the streets, and at that time we took one of the office books, one of the published books, Michael's book, or Green's book, and we computed the cubic capacity of the ship's hold, and, as I recall it, Mr. Dean computed the cubic measurements of those various rolls of paper, and between us we computed that the Neff should carry what she would ordinarily carry of coarse freight cargoes, such as coal and iron ore and that sort of stuff, approximately 1,500 tons."

The actual capacity of the boat was found to be less than 600 tons. The single cargo carried, when it was claimed the boat was overloaded, was less than 600 tons.

The trial judge, at the close of the testimony, expressed his view as follows:

"Everybody acted in good faith, and there is no question in the mind of the court but what, if the facts had been known, the contract never would have been entered into. In other words, if Mr. Neff had been told that he could not carry but 600 tons of paper upon that boat, he would never have let it out to charter."

Upon this situation was the District Court in error in concluding that the parties should be relieved of their contract because of mutual mistake? We think not. It is apparent that both parties believed the paper-carrying capacity of the steamer was 2½ times as large as a trial demonstrated it to be; that both parties acted upon this assumption in fixing the freight rate. The two representatives sat down together in the utmost good faith to figure tonnage capacity. An erroneous computation resulted, and the parties contracted upon the basis of this erroneous computation. Had the parties been computing interest, or striking a balance, instead of figuring on tonnage capacity, and a similar error had occurred, would there have been any doubt as to the duty of the court to relieve the parties from the effect of their mistake? Obviously not.

While involving primarily an issue of fact, the following cases announce the rule which, applied to the above statement of facts, sustains the conclusion here reached: Allen v. Hammond, 11 Pet. 63, 9 L. Ed. 633; Wheeler v. Seamans, 123 Wis. 573, 102 N. W. 28; The Stanley H. Minor (D. C.) 172 Fed. 486; 6 R. C. L. 621, § 41; 13 Corpus Juris, 376, 377.

The decree is affirmed.