HORN, Respondent, vs. SCHLOSSER, Appellant.

*September 13—October 11, 1927.*

*Shipping: Contract of shipment: Lack of information as to carrying capacity of vessel not equivalent to mutual mistake.*

A contract for the shipment of cedar ties and cedar posts by a steamship cannot be avoided on the ground that there was a mutual mistake as to the carrying capacity of the vessel, where, although both parties lacked information as to such capacity, they agreed, in order to avoid controversy, that a lump sum would be paid for a full load for the trip and the steamship did in fact carry a full load.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

The case was tried before the court without a jury. The court made findings of fact favorable to the plaintiff, and rendered judgment thereon for the sum of $1,521.34, the amount due on the contract.

The plaintiff had under charter for the season of 1923 the vessel known as the "Charles Horn." The defendant, having ties and posts located at Agate Harbor, Michigan, and desiring to have them transported from that port to Menominee, Michigan, and Milwaukee, Wisconsin, entered into negotiations with the plaintiff with reference to chartering the boat for that purpose. The negotiations extended over some period of time, and finally resulted in a written contract between the parties, as follows:

"Mr. Win. Schlosser,                    Chicago, June 7, 1923.
      "Milwaukee, Wisconsin.

"Dear Sir: Confirming agreement made with you while you were in our office this forenoon, you are familiar with our steamer Charles Horn, formerly the steamer Marion. As soon as this boat completes her present trip, that is, discharges a cargo of grain at Montreal, we will load her with coal for an upper lake port, and as soon as same is discharged will send her to Agate Harbor for a full load of cedar ties and posts you have there. The ties to be loaded in the hold

and unloaded at Milwaukee, and the posts to be loaded on deck to be unloaded in Menominee, you to load the boat in not to exceed four days, and to provide for dispatch and prompt unloading at destination. In case it rains while loading, so as to delay the loading more than two hours at any one time, the boat is to stand such delay, but in case of rain the loading is delayed for a time less than two hours at any one time, then you are to stand such lost time. The matter of when the boat is loaded or the amount of cedar to be loaded is to be left to the judgment of the captain. The boat, however, is to carry as large a quantity of these ties and posts as is possible, consistent with good seamanship judgment on the part of the captain.

"For making this trip you are to pay a freight of $5,500, and in addition thereto $250 a day for any day or part thereof consumed in loading over and above the four days mentioned. The freight to be paid to the captain net upon delivery.

"This agreement is written in duplicate, and signed by us. If agreeable to you, please accept in duplicate, retaining the original.        Yours very truly,
                        "Charles Horn Lumber Company.
                        "By Charles Horn.
"Accepted: Win. Schlosser."

The plaintiff furnished the vessel according to the contract, which took on a full load at Agate Harbor and delivered the same at Menominee and Milwaukee. The defendant paid $4,300 on account, and refused to pay the balance, on the ground that the parties had entered into a contract through a mutual mistake of fact. The plaintiff brought suit with the result stated.

The defendant appeals and contends: (1) That the agreement between the parties hereto was entered into by and under a mutual mistake of fact and is void because of such mutual mistake of fact; (2) that the agreement being void because of mutual mistake of fact, the plaintiff is entitled to compensation on a *quantum meruit* basis only.

For the appellant there was a brief by *Rix, Barney & Kuelthau* of Milwaukee, and oral argument by *G. Karl Kuelthau.*

For the respondent there was a brief by *Bottum, Hudnall, Lecher & McNamara,* and oral argument by *Harold W. Connell,* all of Milwaukee.

CROWNHART, J.    The respondent resided in Chicago and was in the freight-carrying business.    The appellant resided in Milwaukee and was a dealer in forest products.    The appellant, in June, 1923, had about 15,000 cedar ties and about 33,000 cedar posts at Agate Harbor, Michigan, which he desired transported.    He wrote to the respondent:

"I have about 15,000 cedar ties and 33,000 cedar posts at Agate Harbor, Keewenaw Peninsula, and think your boat, 'Chas. Horn,' would just about carry this. . . .    What freight would you expect if in position to carry this cargo?"

Respondent replied that he thought the quantity of cedar "would hardly make a load for the Horn," and inquired, "Do you think it would?    What rate do you expect to pay, or, as we know nothing about loading conditions there, we would prefer to charter the boat to you by the day."

Appellant replied that he thought the cedar "would make a cargo, but to avoid any controversy as to that I would make a lump freight of five thousand dollars for the ties and posts."    Respondent replied:

"We do not believe that the quantity you mention would make a load for the Horn, but as we have never had a load of cedar on her, and as you know the boat, you probably know about as much as we do about this, and probably more."

Negotiations proceeded and finally resulted in a contract for the trip, for a full load of cedar ties and posts.    The contract clearly indicates that the price was fixed for the trip and for a full load.    It begins with the statement:

"Confirming agreement made with you while you were in our office this forenoon, you are familiar with our steamer Charles Horn, formerly the steamer Marion.    As soon as this boat completes her present trip, that is, discharges a cargo of grain at Montreal, we will load her with coal for

an upper lake port, and as soon as same is discharged will send her to Agate Harbor for a full load of cedar ties and posts you have there."

And later in the contract:

"The matter of when the boat is loaded or the amount of cedar to be loaded is to be left to the judgment of the captain. The boat, however, is to carry as large a quantity of these ties and posts as is possible, consistent with good seamanship judgment on the part of the captain."

Here is the idea, clearly expressed, that the boat might not be able to carry the full quantity of ties and posts, and the amount of the cargo was to be left to the judgment of the captain.

"When parties have entered into a contract or arrangement based upon uncertain or contingent events, purposely as a compromise of doubtful claims arising from them, and where parties have knowingly entered into a speculative contract or transaction,—one in which they intentionally speculated as to the result,—and there is in either case an absence of bad faith, violation of confidence, misrepresentation, concealment, and other inequitable conduct mentioned in a former paragraph, if the facts upon which such agreement or transaction was founded, or the event of the agreement itself, turn out very different from what was expected or anticipated, this error, miscalculation, or disappointment, although relating to matters of fact, and not of law, is not such a mistake, within the meaning of the equitable doctrine, as entitles the disappointed party to any relief either by way of canceling the contract and rescinding the transaction, or of defense to a suit brought for its enforcement."  2 Pomeroy, Eq. Jur. (4th ed.) § 855.

"If A. enters into a contract knowing that he has not sufficient or exact knowledge of a material fact, he cannot avoid such contract on the ground of mistake because such fact turns out differently from what he had hoped. The use of the term 'mistake' implies that the parties are not in ignorance whether the subject matter is in existence or not, deliberately assuming the risk of its non-existence. Where the parties are aware that the existence of the subject matter is doubtful, and contract with reference thereto, each party

taking the chances of the event's being adverse to himself, the contract is valid." 1 Page, Contracts (2d ed.) § 253.

Also, *Kowalke v. Milwaukee E. R. & L. Co.* 103 Wis. 472, 476, 79 N. W. 762.

Neither party to the contract knew the exact carrying capacity of the steamer Charles Horn for the commodity covered, but the appellant had looked up the registry of the boat and had himself determined its carrying capacity. On the other hand, the respondent had disclaimed any positive knowledge as to the load of cedar that the vessel would carry. He had never loaded the vessel with cedar before. He wrote the appellant, "We would prefer to charter the boat to you by the day." The appellant replied: "I think the 15,500 ties and 32,000 post would make a cargo, but to avoid any controversy as to that I would make a lump freight of five thousand dollars for the ties and post. . . ." Negotiations continued, and finally the parties agreed that the boat was to take a full load and "for making this trip you are to pay a freight of $5,500."

There is no question in the evidence but that the boat was loaded to the full extent that would allow it to get out of the harbor. If the harbor entrance had been deeper the boat would have carried an additional quantity of cedar, but not all of it.

The appellant contends that this case is on all-fours with *Ontario P. Co. v. Neff,* 261 Fed. 353. An examination of that case shows a clear distinction. In the *Neff Case* both parties were ignorant of the carrying capacity of the steamer as to the paper to be transported; both parties participated in a computation as to what the ship would carry; the freight charge was dependent upon the number of tons the boat would carry; their computation was mutually erroneous; and the contract was to cover a shipping season. The amount the boat would carry, as erroneously computed, was more than two and one-half times its actual capacity.

In the instant case there was no attempt at computation.

True, both parties lacked information as to the carrying capacity of the boat, but to avoid any controversy a lump freight was agreed upon for a full load and for the trip. The charge was not dependent on the number of posts or ties, but was on a full load and trip basis. The contract did not call for any definite number of ties or posts to be carried, but required the boat to carry a full load,—a full load to be left to the judgment of the captain. There is no question but that the boat did carry a full load.

The findings of the court cannot be disturbed, and the judgment must be sustained.

*By the Court.*—The judgment of the circuit court is affirmed.